THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK FITZGERALD, Appellant.

Argued January 15, 1942; decided April 23, 1942.

*John J. O'Brien* and *Arthur F. Gaynor* for appellant. The defendant was convicted solely on his own statements in violation of section 395 of the Code of Criminal Procedure. (*People* v. *Roach,* 215 N. Y. 592; *People* v. *Taleisnik,* 225 N. Y. 489; *People* v. *Deacons,* 109 N. Y. 374; *People* v. *Steinmetz,* 240 N. Y. 411; *People* v. *Page,* 162 N. Y. 272.)

*Elbert T. Gallagher, District Attorney* (*George M. Fanelli* of counsel), for respondent. The proof meets the requirements of section 395 of the Code of Criminal Procedure. (*People* v. *Brasch,* 193 N. Y. 46; *People* v. *Jaehne,* 103 N. Y. 182; *People* v. *Lo Turco,* 256 App. Div. 1098; *People* v. *Lytton,* 257 N. Y. 310; *People* v. *Badgley,* 16 Wend. 53; *People* v. *Kief,* 126 N. Y. 661; *People* v. *Dixon,* 231 N. Y. 111.)

RIPPEY, J. The defendant, Patrick Fitzgerald, has been tried and convicted as a principal as defined in section 2 of the Penal Law, under an indictment charging that on or about March 25, 1940, he " did aid and abet and act in concert with one John J. Condon in asking and agreeing to receive a bribe and sum of money in violation of section 372 of the Penal Law of the State of New York, in that the said Patrick Fitzgerald * * * did ask and agree to receive from one Joseph Friedlander and Stanley DeCicco for and on behalf and for the benefit of the said John J. Condon, the said John J. Condon, being a public officer, to wit, the Mayor and a member of the Common Council of the City of Yonkers, duly elected " and " qualified * * *, the sum of Three

Thousand Dollars ($3000.00) upon the agreement and understanding that the said John J. Condon, would favor, support, bring about, procure and vote for the enactment by the Common Council of the said City of Yonkers an ordinance of said Common Council, licensing the operation in the said City of Yonkers, of devices commonly known as pin ball machines."

Section 372 of the Penal Law, under which this indictment is laid, provides: " A judicial officer * * * a person elected or appointed a judicial officer or to execute any of the functions of a public officer * * *, who asks, receives, or agrees to receive a bribe, or any money, property, or value of any kind, or any promise or agreement therefor, upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding, shall be influenced thereby, or that he will do or omit any act or proceeding, or in any way neglect or violate any official duty, is punishable by imprisonment for not more than ten years, or by a fine of not more than five thousand dollars, or by both."

The Mayor of the city of Yonkers was the person whom the People asserted in the indictment, in the bill of particulars and in all proceedings at the trial accepted or agreed to receive a bribe from the pin ball operators for his support of an ordinance of the Common Council of the city which would authorize licensing the operation of the pin ball machines. It is not claimed nor is there any evidence that any money was paid to any one. In the bill of particulars the People assert that " it is not claimed that the said defendant actually received any money or other thing of value from the said Joseph Friedlander and Stanley DeCicco in pursuance of the said asking and agreeing as mentioned in the indictment herein." There is no claim or proof that the defendant sought a bribe for himself as a public officer.

It was, therefore, essential for the People to prove by competent and sufficient legal evidence that the Mayor of the city of Yonkers was involved in the crime charged in the indictment before conviction of defendant was possible. Defendant did not take the stand as a witness at the trial. His testimony before the grand jury which found the indictment and his confessions to others outside of judicial proceedings, however, were admitted in evidence in which he directly involved the Mayor in knowledge of and com-

plicity in the attempted bribery. Exclusive of those confessions, there is no evidence in the record, direct or circumstantial, that the crime of bribery or attempted bribery, as set out in the indictment, had been committed by any one. The testimony of the pin ball operators showed or tended to show only that the defendant solicited money from them for the purpose of procuring the passage of a licensing ordinance in aid of which solicitation the defendant stated that he could bring about the passage of the ordinance. It was further established and conceded that no such ordinance was at any time proposed in or passed by the Common Council, of which the Mayor was a member. None of the pin ball machine operators had any knowledge of any meeting or communication on the subject between defendant and the Mayor or defendant and any of the other Councilmen. They testified that they did not know whether defendant was acquainted with the Mayor or with any Councilman or whether any one of them had been approached on, or was interested in, an ordinance to license pin ball machines. Four of the five denied that they had heard the name of the Mayor or that of any of the Councilmen mentioned. The fifth, DeCicco, alone testified that on one occasion when he and defendant were alone, " I asked him who was this money supposed to go to and he says I think it was supposed to be given to Condon, but probably he just said that to say something." The operators told defendant that they would not accept his proposal or advance any money.

As before stated, to establish the *corpus delicti* it was necessary to prove that the Mayor was involved in the crime, that he was the public officer who accepted or agreed to accept a bribe. The Mayor was not indicted; he was not on trial. By legislative mandate it is provided that " A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him * * * but it is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed " (Code Crim. Proc. § 395). The mandate of the statute is clear. It needs no construction nor can its meaning be stretched beyond its clear import. In many cases the subject of the necessity of evidence beyond a confession has been a matter of discussion. Among them are the following: *People* v. *Badgley* (16 Wend. 53); *People* v. *Jaehne* (103 N. Y. 182,

199); *People* v. *Deacons* (109 N. Y. 374, 378); *People* v. *Burness* (178 N. Y. 429, 431); *People* v. *Brasch* (193 N. Y. 46, 60); *People* v. *Giusto* (206 N. Y. 67, 77); *People* v. *Roach* (215 N. Y. 592, 600); *People* v. *Lytton* (257 N. Y. 310); *People* v. *Lo Turco* (280 N. Y. 844). However, in all of those cases where conviction has been sustained, there has been evidence, direct or circumstantial, exclusive of that found in the confessions, that the crime charged had been committed. In other cases where the rule was applicable no conviction of a defendant has been permitted to stand where there was no evidence *dehors* the confession, either direct or circumstantial, to prove that the crime charged had been committed (*People* v. *Plath*, 100 N. Y. 590; *People* v. *Caniff*, 2 Park. Cr. Rep. 586; *United States* v. *Mulvaney*, 4 Park. Cr. Rep. 164; *People* v. *Hennessey*, 15 Wend. 147; *People* v. *Nentarz*, 239 App. Div. 109; *Wistrand* v. *People*, 213 Ill. 72).

Exclusive of the confessions of defendant in the case at bar, there is no evidence, direct or circumstantial, from which it might be found that the crime charged in the indictment was committed.

The judgments should be reversed and a new trial ordered.

LEHMAN, Ch. J., LOUGHRAN, FINCH, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.